IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Henry Chai | : | |
| | : | |
|     Plaintiff | : | Case No. C-1-03-566 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| The Allstate Insurance Co. | : | ORDER GRANTING MOTION FOR |
| | : | SUMMARY JUDGMENT |
|     Defendant | : | |

This matter comes before the Court on Defendant Allstate Insurance Company's Motion for Summary Judgment (doc. #30).  Allstate contends that there are no material facts in dispute and that it is entitled to judgment as a matter of law on Plaintiff's employment discrimination claims.  For the reasons that follows, the Court **GRANTS** Allstate's motion.

**I.  BACKGROUND**

Plaintiff Henry Chai is licensed to sell insurance in the State of Ohio.  (Chai depo. at 18, 54.)  He was first hired by Allstate as an employee in 1995.  (Id. at 25.)  He was paid a base salary plus commission at that time.  (Id. at 28.)

On February 1, 1997, Chai executed a R3001A Exclusive Agency Agreement ("the EA Agreement") purportedly between Allstate and an entity called "Warren-Chai Inc."  (EA Agrmt. p. 1.)[1]  Warren-Chai Inc is listed as the "Agency," and Chai as the "Key Person" on behalf of the Agency, in the EA Agreement.  (Id. p. 1-2.)  Relevant provisions of the EA Agreement are set forth in more detail in the Analysis section below.

---

[1] The EA Agreement is attached as exhibit 1 to Defendant's Motion to Dismiss the Amended Complaint (doc. #16) and as exhibit 4 to Chai's deposition.

After Chai executed the EA Agreement, Allstate paid commissions for Chai's sales of Allstate products to an entity called Warren-Chai Enterprises, Inc. (Chai depo. at 70-71.) Chai is the sole shareholder of Warren-Chai Enterprises, Inc. and he received a salary from Warren-Chai Enterprises, Inc. (Id. at 52.) Warren-Chai Enterprises, Inc. is registered as a corporation in the State of Ohio and it became licensed to sell insurance in 2002. (Id. p. 54-56, 199-200.)

Allstate's exclusive agents have an economic interest in their customer accounts, also called "Books of Business" or "BOBs." (Ford aff. ¶ 4.) Agents can expand their business by purchasing another agent's BOB. (Chai dep. at 83.) Allstate maintains that it is not involved in facilitating or establishing the terms for the sale of a BOB from one agent to another. (Ford aff. ¶ 5.) On the other hand, Chai contends that Allstate managers act as gatekeepers and help sellers find potential buyers. (Chai depo. at 100-01, 162-67; Cook aff. ¶ 23.) It is undisputed that Allstate must approve the sale of a BOB and determine that the potential buyer meets eligibility requirements. (Ford aff. ¶ 5.) A potential buyer must submit a business plan to Allstate that demonstrates his or her qualifications. (Id.) Chai contends that a potential buyer must get his manager's verbal approval to purchase a BOB before he can submit a written application and business plan to Allstate. (Chai aff. ¶ 37.)

In this suit, Chai alleges that Allstate discriminated against him on the basis of his race (Asian) and national origin (Korean). Chai alleges that Allstate frustrated his attempts to purchase other agents' BOBs and also that Allstate imposed more stringent operating requirements on his agency than it did on other agencies. He filed a Complaint (doc. #1) against Allstate on August 12, 2003 and an Amended Complaint (doc. #14) on January 8, 2004. Allstate now moves for summary judgment.

2

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure governs motions for summary judgment. Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. Pro. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law."  Id. at 252.

## III.    ANALYSIS

Chai asserts discrimination claims arising under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e et seq.  Allstate moves for summary judgment on the following three grounds: (1) Chai

has no standing to bring a § 1981 claim because he is not a party to the EA Agreement with Allstate; (2) Chai has no standing to bring a Title VII claim against Allstate because he is an independent contractor, not an employee; and (3) Chai cannot prove a prima facie case of discrimination under § 1981 or Title VII. Because the Court finds in favor of Allstate as a matter of law on the first and second grounds, the Court will not address the third ground.

      A.      **Standing to Bring a Section 1981 Claim**

42 U.S.C. § 1981 protects from racial discrimination the right to make and enforce contracts. The 1991 amendment to § 1981 expanded the protection of the right to make and enforce contracts to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Allstate contends that Chai lacks standing to bring his § 1981 claim because he is not a party to the EA Agreement between Warren-Chai Inc. and Allstate. The "irreducible constitutional minimum" of Article III standing requires three elements: (1) the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected, concrete, and particularized interest, which is "actual or imminent, not conjectural or hypothetical;" (2) a causal connection must exist between the injury and the conduct complained of such that the alleged injury is fairly traceable to the challenged action of the defendant, rather than the result of an independent action of a third party not before the court; and (3) it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

In the EA Agreement, Warren-Chai Inc is denominated as the "Agency" and Chai merely

as the "Key Person." (EA Agrmt. p. 1-2.) Allstate specifically contends that the evidence establishes that the parties intended Warren-Chai Enterprises, Inc., the registered Ohio corporation for whom Chai is the sole shareholder, and not Warren-Chai Inc., to be the contracting party with Allstate. If true, Chai, as a mere shareholder of Warren-Chai Enterprises, Inc., would lack standing to bring a § 1981 claim. "Nothing in section 1981 provides a personal claim, so far as its language is concerned, to one who is merely affiliated – as an owner or employee – with a contracting party that is discriminated against by the company that made the contract." Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999); see also Edwards v. Walter Jones Constr. Co., No. 98-4366, 2000 WL 302710, at *1 (6th Cir. Mar. 17, 2000) (dismissing sole shareholder's § 1981 claim alleging the defendant discriminated against the shareholder's wholly owned corporation).

    Chai, on the other hand, argues that he was the party conducting business when he entered into the EA Agreement and Warren-Chai Inc. is merely a fictitious name. Ohio law generally does not distinguish between an individual and a fictitious entity through which he conducts business. See Patterson v. V & M Autobody, 63 Ohio St. 3d 573, 575, 589 N.E.2d 1306 (1992); Poss v. Morris, No. 94-A-0042, 1996 WL 200614, at *3 (Ohio Ct. App. Mar. 29, 1996). However, the Ohio Revised Code ("O.R.C.") prohibits an individual from bringing an action on a contract entered into by a fictitious entity until the individual has registered the name of the fictitious entity with the Ohio Secretary of State. See O.R.C. § 1329.10(B); see also Frate v. Al-Sol, Inc., 131 Ohio App. 3d 283, 288-89, 722 N.E.2d 185 (Ohio Ct. App. 1999). The Ohio Secretary of State did not permit Chai to register Warren-Chai Inc. as a fictitious name because it contained a "corporate ending." (Chai aff. ex. 1.) Thus, Chai has no capacity to bring an action

sounding in contract against Allstate on the EA Agreement even if he intended the fictitious entity, Warren Chai Inc., to be the Agency.  See Frate, 131 Ohio App. 3d at 288-89.

Chai, however, contends further that a § 1981 action sounds in tort, not contract.  The Supreme Court stated in Goodman v. Lukens Steel Co., 482 U.S. 656 (1987), that § 1981 "has a much broader focus than contractual rights."  Id. at 661.  The issue in Goodman was whether § 1981 sounded in contract or tort for purposes of borrowing the appropriate statute of limitations for a § 1981 claim.  The Supreme Court found that § 1981 is "part of a federal law barring racial discrimination, which . . . is a fundamental injury to the individual rights of a person" and held that the limitations period for a state statute governing personal injuries should be applied.  Id.[2]  Arguably, therefore, a § 1981 claim sounds in tort and O.R.C. § 1329.10 would not bar Chai's cause of action if the parties intended that Chai, through a fictitious entity, was the actual party contracting with Allstate in the EA Agreement.

Thus, the issue becomes whether the parties intended that Chai, d/b/a as the fictitious entity, Warren-Chai Inc., was to be the Agency party under the EA Agreement or whether the parties intended that the separate corporate entity, Warren-Chai Enterprises, Inc., was to be the Agency party.  The EA Agreement is ambiguous in this regard.  The name of the Agency is identified as "Warren-Chai Inc." on the first page, wherein the "Inc." signifies facially that the Agency is a corporation, an entity that is legally distinct from that of its owner or owners.  (EA Agrmt. p. 1.)  That implication is buttressed by the fact that the EA Agreement is stated on an Allstate form contract number R3001A, a particular form contract used only where the Agency is

---

[2] Goodman was superceded by statute, 28 U.S.C. § 1658, which sets a default limitations period of four years for all Acts of Congress.

a corporation or limited liability company. (Ford aff. ex. 1 p.14.) On the other hand, however, the name identified on the signature page "Warren-Chai Inc. (Henry I. Chai)" would tend to indicate that Warren-Chai Inc. was merely a d/b/a for Chai. (EA Agrmt. p. 11.) Accordingly, because the EA Agreement is ambiguous, it is appropriate to look outside the four corners of the contract to determine the parties' intent. See Orchard Group, Inc. v. Konica Med. Corp., 135 F.3d 421, 429 (6th Cir. 1998).

Here, the extrinsic evidence indicates that the parties intended a separate legal entity, Warren-Chai Enterprises, Inc., to be the Agency. Chai testified at his deposition that he intended for Warren-Chai Enterprises, Inc. to be the Agency under the Agreement. (Chai depo. at 44-46.)[3] Chai completed a W-9 Form for Allstate in the name of Warren-Chai Enterprises, Inc. in 1997 and 1998. (Id. at 50-52 & exs. 5, 6.) Also, Allstate pays commissions for sales by Chai's Agency to Warren-Chai Enterprises, Inc. and provides Warren-Chai Enterprises, Inc. with a Form 1099 for tax purposes. (Id. at 52, 70-71 and errata.) Chai, in turn, receives a salary from Warren-Chai Enterprises, Inc. (Id. at 52.) Finally, when Allstate learned in 2002 that Warren-Chai Enterprises, Inc. was not licensed to sell insurance, it advised Chai of the same and Chai obtained an insurance license for the corporation. (Id. at 54-56, 199-200 & ex. 7.)

Chai has not put forth evidence that would tend to prove the parties intended for Chai personally or his non-registered fictitious entity to be the contracting party under the EA

---

[3] Chai's attempt to change this testimony by making a "clarification" to the errata sheet fails. Chai has not given a reason for making the proposed change to his testimony as required by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 30(e). In any event, Chai's new errata testimony that he is not sure what he intended when he wrote Warren-Chai Inc. into the Agreement does not directly contradict his testimony that he intended Warren-Chai Enterprises, Inc. to be the Agency.

Agreement. The Court is permitted to interpret ambiguous contract language as a matter of law on a motion for summary judgment when the nonmoving party does not present evidence that supports a reasonable interpretation different than that put forth by the moving party. See GenCorp., Inc. v. American Int'l Underwriters, 178 F.3d 804, 818-19 (6th Cir. 1999). Therefore, the Court holds that the parties intended Warren-Chai Enterprises, Inc. to be the contracting Agency party under the EA Agreement. Chai does not have standing to bring a § 1981 claim as the shareholder or employee of Warren-Chai Enterprises, Inc. Allstate, therefore, is entitled to summary judgment on Chai's § 1981 claim.

### B. Standing to Bring a Title VII Claim

Title VII prohibits employment discrimination based on, inter alia, race and national origin. See 42 U.S.C. § 2000e-2(a)(1). Chai does not contest that Title VII prohibits discrimination only against employees, not against independent contractors. See Christopher v. Stouder Mem'l Hosp., 936 F.2d 870, 877 (6th Cir. 1991).

In Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992), the Supreme Court adopted a common-law test for determining who qualifies as an employee for the purposes of the Employee Retirement Income Security Act. The Darden common-law test has been expanded to cover "employees" under Title VII. See Shah v. Deaconess Hosp., 355 F.3d 496, 499 (6th Cir. 2004). Factors relevant to the determination of whether a litigant is an employee or independent contractor include the following:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the

8

provision of employee benefits; and the tax treatment of the hired party. Darden, 503 U.S. at 323-324 (quotation omitted).

No one factor is decisive. See id. at 324. The crux of the test is "the hiring party's right to control the manner and means by which the product is accomplished." Weary v. Cochran, 377 F.3d 522, 525 (6th Cir. 2004) (quoting Darden). Determination of employment status is a mixed question of law and fact that can typically be resolved as a matter of law by a judge. See id. at 524. However, the question is appropriate for a factfinder where the material facts are in dispute or different inferences can be drawn therefrom. See Lilley v. BTM Corp., 958 F.2d 746, 750 n.1 (6th Cir. 1992). As a general matter, the Sixth Circuit "has repeatedly held that insurance agents are independent contractors, rather than employees, in a variety of contexts." Weary, 377 F.3d at 524.

Before addressing the particular factors of the common-law test, the Court notes that the EA Agreement explicitly states that the relationship between Allstate and the Agency, or its employees or officers, is "that of an independent contractor for all purposes." (EA Agrmt. § I ¶ B.) Moreover, Chai testified repeatedly at his deposition that he was not an employee of Allstate and that he became an independent contractor when he entered into an "R3001" EA Agreement in 1997. (Chai depo. at 39-40, 60, 80, 147-48.) This is relevant evidence tending to prove Chai was an independent contractor, but it alone is not determinative. See Hishon v. King & Spalding, 467 U.S. 69, 80 n.2 (1984) (Powell, J., concurring); Weary, 377 F.3d at 525.

As to the level of skill required, neither party points to any evidence in the record as to this factor. The Court notes that Chai discussed in his deposition that he and Warren-Chai Enterprises, Inc. are licensed by the State of Ohio to sell insurance. (Chai depo. at 54-55, 199-

200.) This factor weighs, however slightly, in favor of independent contractor status. See Weary, 377 F.3d at 527.

The next factor is the source of instrumentalities and tools. The EA Agreement states that unspecified supplies are provided by Allstate, but that the Agency is responsible to pay for other supplies, telephone, postage and advertising expenses, and other charges and expenses. (EA Agrmt. § VIII; Chai depo. at 69.) Allstate provides the computer system, programs, and technical support that Chai uses. (Chai aff. ¶ 11.) Allstate advertises Allstate products, but the Agency also is permitted to do its own advertising at its own expense. (EA Agrmnt. §§ VI, VIII.) Allstate does not require the Agency to produce any particular kind of advertising. (Chai depo. at 68.) Advertising materials that use Allstate's service mark or trade name are subject to prior approval from Allstate. (EA Agrmt. § VI.) However, the Sixth Circuit stated in Weary that similar insurance company advertising restrictions were "understandable" and were "not the type of control that establishes an employer/employee relationship." 377 F.3d at 526; Cuellar v. Allstate Ins. Co., No. 00-321, slip op. at 10 (S.D. Tex. May 31, 2001) (stating that similar restrictions indicated only that Allstate wanted to present a uniform appearance to the public). This factor weighs in favor of independent contractor status.

Regarding the location of the work, the EA Agreement states that work may be conducted at the location of the Agency's choice within a geographical area specified by Allstate. (EA Agrmt. § V ¶ A.) In this regard, Chai emphasizes that he requested, but was denied permission, to move his office to a location which he viewed as a more affluent area with more opportunities for business. (Chai depo. at 64-66, 113-14.) However, agencies do not have exclusive territorial rights associated with their office locations (EA Agrmt. § V ¶ A), and Chai is not prohibited from

soliciting business outside his geographical area. Moreover, Chai is responsible for paying for his office space. (Id. § VIII.) This factor, on the whole, weighs in favor of independent contractor status.

The parties contest the extent of Allstate's control over the hours worked by Chai. Allstate requires Chai to keep the Agency open for a minimum of 44 hours per week and at least from 9:00 a.m. to 5:00 p.m. Monday through Friday. (Chai aff. ¶ 28 & ex. 2.) Allstate also restricts on which holidays Chai can close the Agency. (Id. ¶ 29.) Finally, Chai states that he has not been permitted to close the Agency to take vacation or for illness. (Id. ¶ 32.) On the other hand, Allstate contends that Chai mischaracterizes the Allstate requirements. As the key person for the Agency, Chai has to be "actively involved" in running the Agency, but he did not have to be physically present at all times if he had other people physically present to conduct business. (EA Agrmt. § II ¶¶ D, E; Chai depo. at 58-60.) The Allstate Agency Standards specifically stated that "[t]he agent **or an authorized sales producer** must be present during required agency hours." (Chai aff. ex. 2 (emphasis added).)

Allstate exercises more control over Chai's work hours than some insurance companies do over their agents. For example, the agent in Weary who was held to be an independent contractor was not restricted by the insurance company as to when or how long he worked, and he was permitted to take vacations at his leisure. See 377 F.3d at 527. Nonetheless, a court in the Sixth Circuit has stated that an insurance company's regulation of the minimum hours an agent's office must be open does not weigh in favor of finding either employee status or independent contractor status. See Ware v. United States, 850 F. Supp. 602, 606 (W.D. Mich. 1994) aff'd 67 F.3d 574 (6th Cir. 1995). Also, the control exercised by Allstate over the hours the Agency must be open

11

is greatly tempered by the fact that Chai has discretion to hire other authorized sales producers to operate the Agency on his behalf, so long has he still remains actively involved in the Agency. Thus, the Agency hours restriction does not directly regulate the hours that Chai must work. See Desimone v. Allstate Ins. Co., Nos. C 96-03606 & C 99-02074, 2000 WL 1811385, at *12 (N.D. Cal. Nov. 7, 2000) (stating that the hour requirements do not restrict Allstate agents like employees are restricted); Allstate Ins. Co. v. Office and Professional Employees Int'l Union, No. 13-RC-20827, slip op. at 18 (NLRB Dec. 2, 2002) (stating that the discretion to hire employees gives the Allstate agents "discretion to set their own schedule").

The next factor is the method of payment. The Agency's compensation is based on commissions. (EA Agrmt § XIV ¶ A.) Allstate pays commissions to Warren-Chai Enterprises, Inc., who in turn pays a salary to Chai. (Chai depo. at 52-53, 70-71.) This factor supports a finding of independent contractor status. See Weary, 377 F.3d at 527.

The next factor is Allstate's role in hiring assistants. The EA Agreement states that the Agency has the sole right to hire, transfer, promote, and discipline its own employees. (EA Agrmt. § III ¶ A.) Chai contends, to the contrary, that his hiring decisions had to be approved by Allstate and that prospective staff had to pass Allstate-administered tests to receive binding authority from Allstate. (Chai aff. ¶ 23.) Chai does not explain the basis for the assertion, such as a statement to that effect from an Allstate manager, nor does he give any concrete examples. In any event, Chai contends at most that Allstate imposed qualification standards upon whom he could hire, not that Allstate dictated whom Chai should hire. Additionally, as discussed immediately below, it is undisputed that Chai was responsible for paying his employees' salaries. (EA Agrmt § III ¶ B.)

Turning to the related factors of the provision of employee benefits and tax treatment, the EA Agreement states that the Agency is responsible for its workers' salaries and compensation and for the payment of all taxes, assessments, and federal and state unemployment compensation, Social Security requirements, and proper withholding of state and federal tax. (EA Agrmnt. § III ¶ B.) Relatedly, the Agency is required to obtain, maintain, and pay for its own insurance. (Id. § XI.) Chai cites to no evidence to the contrary. This factor weighs in favor of independent contractor status.

Two factors weigh in favor of finding employee status. The long duration of the relationship between the parties tends to point to an employee status because Chai began as an employee of Allstate in 1995 before entering into the EA Agreement in February 1997. (EA Agreement at 11; Chai depo. at 25.) Likewise, that Chai's work selling insurance is part of Allstate's regular business also points to an employee status. See Weary, 377 F.3d at 528 (finding same, but holding that this factor was outweighed by overwhelming evidence that pointed to Weary's independent contractor status). However, neither of these factors is directly related to whether Allstate controls the means and methods of Chai's work.

Finally, Chai cites to other factors, not specifically stated in the common-law test, as being relevant to the issue of Allstate's control over Chai's work. For instance, Chai points out that he was supervised by and had to report to a local manager and a territorial manager, and that he was subject to yearly performance reviews. (Chai depo. at 85-86; Chai aff. ¶ 56.) Although supervision and review might tend to show employee status, the fact that Allstate imposes performance result standards does not mean that Allstate controls the methods used to reach the desired results. See Desimone, 2000 WL 1811385 at *13; Office and Professional Employees

Int'l Union, No. 13-RC-20827, slip op. at 19.

Chai also points out that he is prohibited from selling insurance products other than for Allstate without Allstate's consent. (Chai aff. ¶ 12; EA Agrmt. § I ¶ E).) The independent contractor agent in Weary, by contrast, sold products for fifteen insurance companies. See 377 F.3d at 526. In an earlier case, however, the Sixth Circuit held that an insurance agent who was required to represent Nationwide Mutual Insurance Company exclusively was an independent contractor. See Plazzo v. Nationwide Mut. Ins. Co., No. 88-4016, 1989 WL 154816, at *1 (6th Cir. Dec. 22, 1989). Also, there is no evidence that Allstate restricted Chai from engaging in other types of entrepreneurial activities.

Lastly, Chai states that Allstate set the rates, discounts, and surcharges for the policies Chai sold, determined the commission rate the Agency would be paid, and imposed production quotas. (Chai aff. ¶¶ 13, 21, 22.) Again, these restrictions affect the type of products Chai sells and the profit the Agency made, but they do not affect or restrict the manner or method by which Chai sells and services Allstate insurance policies. See Kahn v. American Heritage Life Ins. Co., 324 F. Supp. 2d 652, 657 (E.D. Pa. 2004) (calling an insurance company's similar control over forms, plans, rates, and commissions to be the "minimum that a corporation has to retain to maintain its product quality and its consistent business practice").

Examining these factors as a whole, the Court holds that the evidence that Chai is an independent contractor is so overwhelming that no reasonable jury could hold otherwise. See Liberty Lobby, 477 U.S. at 249. The most relevant evidence is the clear intent of the parties as expressed in the contract; Chai's repeated deposition testimony that he was an independent contractor; the fact that the Agency was paid exclusively by commissions; Chai's responsibility

to pay for supplies, office, advertising, insurance, and staffing expenses; and multiple factors demonstrating Chai's control over the means and manner of his work, including his ability to hire employees, his right to advertise his Agency separate from Allstate's general advertising, his right to locate his office anywhere within a defined geographical area, and his ability to sell products outside of his geographical area.

In so holding, this Court joins other courts and administrative bodies in finding Allstate exclusive agents to be independent contractors. See Zink v. Allstate Ins. Co., No. 02-14134-CIV-MOORE, slip op. at 9 (S.D. Fla. Feb. 21, 2003); Cuellar, No. 00-321, slip op. at 10; Weisgerber v. Allstate Ins. Co., No. 99-S-2073, slip op. at 3 (D. Colo. Mar. 9, 2001); Desimone, 2000 WL 1811385, at *17; Office & Professional Employees Int'l Union, No. 13-RC-20827, slip op. at 16. Finally, the Court notes that Chai has pointed to no cases finding Allstate agents, or insurance agents operating under similar restrictions, to be employees of the insurance company whom they represent. Allstate is entitled to summary judgment on Chai's Title VII claim because Chai is not entitled to the protections of Title VII as an independent contractor.

## IV. CONCLUSION

For the foregoing reasons, Defendant Allstate's Motion for Summary Judgment is **GRANTED** (doc. #30).

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge